### FOLEY v. NEW YORK SAVINGS BANK.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. ASSIGNMENTS (§ 49*)—SAVINGS BANK DEPOSIT—EQUITABLE ASSIGNMENTS.

The execution by a depositor in a savings bank of a draft upon the bank directing it to pay to plaintiff or bearer "balance of account ——— dollars, on account of bank book No. 202670," accompanied by a delivery to plaintiff of the bank book, operated as an equitable assignment of the fund.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 85–98; Dec. Dig. § 49.*]

2. GIFTS (§ 66*)—GIFT CAUSA MORTIS—BANK CREDITS.

A draft drawn to plaintiff or bearer on a savings bank for the "balance of account ——— dollars, on account of bank book No. 202670," accompanied by the delivery of the donor's bank book, with intent to give the money to plaintiff, was evidence of a gift causa mortis, even though it did not appear that donee received actual delivery of the book from donor's hands.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 135–138; Dec. Dig. § 66.*]

3. EVIDENCE (§ 121*)—RES GESTÆ.

In an action on a draft drawn in plaintiff's favor by a decedent upon his deposit in defendant bank, evidence of what decedent told plaintiff at the time of drawing the draft was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 303, 307–338, 1117, 1119; Dec. Dig. § 121.*]

Appeal from Appellate Term, First Department.

Action by James Foley against the New York Savings Bank. From a determination of the Appellate Term (141 N. Y. Supp. 1119) reversing a judgment of the City Court and granting a new trial, plaintiff appeals. Reversed, and judgment of the City Court affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, DOWLING, and HOTCHKISS, JJ.

Frederick W. Hamberg, of New York City, for appellant.

Edgar L. Ryder, of New York City, for respondent.

HOTCHKISS, J. The facts appearing at the trial were as follows: Plaintiff and one Murphy had been acquaintances for 14 years previous to the latter's death. Murphy died on May 17, 1912, at plaintiff's house, where he had lived for 11 months previous to his death. On May 12, 1912, Murphy, apparently being then ill in bed, called plaintiff to his side, and said:

"I want you to go and get that man to come here and fix up this money matter; I want you to have it. If I live, well and good, and if I do not you can have it and see after me and bury me decently and have a mass in church, and put a stone over my head, and give the money to charity and get masses for my soul and give it to any one you like."

To this plaintiff replied:

"I will do that, and I will give you my hand and word I will never go back on you."

The "man" referred to by Murphy was Blakelock, an employé in defendant's bank and a witness in its behalf, with whom both Murphy and plaintiff were acquainted. Plaintiff on the same day called at defendant's banking house and saw Pentz, defendant's secretary, to whom he (plaintiff) explained what Murphy wanted to do. Pentz promised to send a man to see Murphy, and further said, as he testified:

"If Mr. Murphy answers the questions satisfactorily, it will be all right."

On the following day, the 13th, Blakelock called to see Murphy. Sworn as a witness for defendant, Blakelock testified that he asked Murphy numerous customary questions as provided by defendant's by-laws, and among other things:

"I asked him who he wanted the New York Savings Bank to pay the money to, and he indicated Mr. Foley."

It seems, however, that Murphy's condition was such that Blakelock was unable to get from him satisfactory answers to all his questions. Blakelock returned on the 14th, and Murphy answered satisfactorily all questions then asked. On the 15th Blakelock again called upon Murphy, asked further questions, and apparently received satisfactory answers.

When Blakelock saw Murphy on May 14th, he prepared the following draft, which was signed by Murphy and acknowledged by him before Blakelock, as notary:

"$1529.85                                        New York, May 14, 1912.
                    "The New York Savings Bank,
"Pay to James Foley or Bearer, Balance of account ——— Dollars, on account of Bank Book No. 202670.

                                                        his
"Present Residence: 207 W 141        Timothy  X  Murphy."
                                                        mark

Attached to the draft is a further certificate, in form one of acknowledgment by Murphy, dated May 14th, and purporting to be signed by one Tenner, a physician, which, in addition to its certificate of acknowledgment, has the following:

"I also certify that the said Timothy Murphy is of sound and disposing mind and capable of understanding the nature of said transactions, but is physically unable to write his name."

The draft was delivered by Blakelock to plaintiff, presumably at the time it was executed or immediately thereafter. Just when or how plaintiff got possession of the bank book does not appear, but that he had it in his possession, and that on May 15th he presented it and the draft at the bank, and demanded payment of the latter, is testified to both by plaintiff himself and by defendant's teller. That there is no affirmative evidence to show that Murphy personally delivered the bank book to plaintiff I do not regard as important. Where the evidence of possession by the donee and of the donor's intent to give is as clear as it is in this case, evidence that the donee received actual delivery of the gift from the hands of the donor is unnecessary.

When the book and draft were so presented to defendant, a bookkeeper of defendant balanced the book, a receipt for the amount was made out and signed by plaintiff, the book and draft were stamped "Closed by payment," and plaintiff was directed to go to the proper "window" to receive the money. After waiting for some time, plaintiff was told that payment would not be made. On May 16th plaintiff again demanded payment, which was refused. A similar demand was made with the same result on the 18th, the day following Murphy's death, at which time defendant refused to return to plaintiff the book and draft, which it had retained from the time it had originally received them on May 15th.

[1, 2] Upon these facts, the transaction may be sustained both on the ground that the check operated as an equitable assignment of the fund, and also upon the ground that delivery of the check and the book was evidence of a valid gift causa mortis of the moneys standing to Murphy's credit at the bank. Upon the first proposition, it will be noticed that the draft was not against the general credit of the drawer with the drawee, but was drawn on a specific and identified fund, and that it was for the whole of such fund and notice of the draft was given to the bank before the drawer's death. I can conceive of nothing further necessary under any circumstances to effect an assignment in equity. O'Connor v. M. Bank, 124 N. Y. 324, 332, 26 N. E. 816. That there was a valid gift (McGuire v. Murphy, 107 App. Div. 104, 94 N. Y. Supp. 1005) is sufficient authority.

[3] I am also of the opinion that the learned Appellate Term was in error in holding that the testimony of plaintiff as to what Murphy told him was improperly admitted. Severn v. Nat. Bank, etc., 18 Hun, 228; Lyon v. Whittaker, 77 Hun, 107, 28 N. Y. Supp. 296.

The determination of the Appellate Term should be reversed, with costs in this court and in the Appellate Term, and the judgment of the City Court of New York affirmed. All concur.