Manuel S. Holmes

*vs.*

Charles W. Vigue, Executor, et alii.

Kennebec.      Opinion, July 12, 1934.

*Harvey D. Eaton*, for plaintiff.
*Perkins & Weeks*, for executor.
*Locke, Perkins & Williamson*, for legatees.

SITTING: DUNN, STURGIS, BARNES, THAXTER, JJ.

DUNN, J. In this equity appeal, plaintiff is the appellant. Ultimate question, on the pleadings, proofs, and exhibits, was the ownership of certain bonds, savings bank books, stock certificates, a promissory note, and an annuity contract, in the possession of the executor of a will. The plaintiff contended that these represented or would produce, sundry accumulations of moneys, which, at odd times, over a period of years, he had delivered to the testatrix (his wife,) prior to her death, in 1931, in trust. On the part of the defense, it was submitted that direct evidence and reasonable inferences established voluntary and absolute transfers, distinctly impressed with the character of separate estate. The rights of no creditors of the husband were involved. Decision went on the theory of present gifts. Donative intent, delivery, and acceptance were found to have invested, in the instance of each item, just as good a title as could have been acquired otherwise. The justice hearing the cause ruled that a gift from a husband to his wife might be inferred from circumstances; as when, for example, she received property, managed it, controlled it, for years, with his acquiescence, consonant with owning originally. *Davis* v. *Zimmerman*, 40 Mich., 24; *Gray* v. *Gray*, 111 Me., 21, 87 A., 661.

Only the plaintiff introduced evidence. He himself did not, because, according to common-law rules of evidence governing the situation, he might not, witness.

The factual history is comparatively brief.

Plaintiff was a physician; his practice was begun in his home town (Oakland) in 1879. The following year he married. He had not, to then, been able to repay the cost of his education. Twelve years later his financial condition had improved sufficiently to enable him to be freed from debts, and to own his home. Mrs. Holmes,

who at the time of intermarriage was without material property, engaged in no occupation apart from that devolving upon her as a wife. In 1893, her husband conveyed the homestead to her. The title to other parcels of real estate, or interests therein, he later, directly or indirectly, invested in her. The bill recognizes the realty as hers in fee. Her distributive share from her father's estate, in 1911, amounted to one hundred dollars. She had, besides the real property, at her death,—as her own, concededly,—wearing apparel, two five dollar gold pieces, old-fashioned furniture, silver and plated ware, a watch and jewelry.

One bank book was in the house. Everything else in dispute was in a deposit box in a bank vault. No evidence tends to show that the safety box was, or ever had been, accessible to anybody except Mrs. Holmes. The bonds, of which there were three, each for one hundred dollars, are negotiable to bearer. There are twenty savings bank books, counting a loan and building association as a bank. All are in the name of Mrs. Holmes. Two show closed accounts; eighteen evidence active ones. These accounts, as cast up six months after the depositor's death, amount to $42,602.43. The certificates of stock are for three shares of Central Maine Power Company, twenty shares of Oakland Water Company, two shares of Oakland Improvement Association, and five shares of Oakland Woolen Company. Each certificate stands in the name of the now decedent. No estimate of the value of any stock is given. The promissory note, dated April 1, 1929, is for $400.00; it is payable to plaintiff or his wife, one month after demand. The annuity contract, or certificate, is in favor of the plaintiff and wife, or the survivor of them, in semiannual instalments of $12.25. The note, by its terms, is payable to either of two payees. The plaintiff seems entitled to it. R. S., Chap. 164, Sec. 8. The annuity certificate, too, appears to be his, on its very face.

The next question, on the appeal, is whether the finding as to the bonds, the savings bank books, and the corporate certificates, is manifestly wrong.

The question as to what constitutes a gift is ordinarily one of law; on the facts in the particular case, the question was of law and fact, mixed. 12 R. C. L., 974.

The finding relating to the books and certificates will have con-

sideration first. These themselves tended to prove that Mrs. Holmes was the creditor of the various banks, and the holder of shares in the different corporations. The bill alleged that the deposits were made, and the securities bought, by her, with the full knowledge, consent, and approval of her husband. That allegation was substantiated. The evidence fairly established that all bank deposits, and withdrawals therefrom, were made by her exclusively, without any attempt at control or use on the husband's part. Nor were there acts of dominion by him over the stock certificates. Unqualified possession of them by the wife, to the husband's knowledge, without inquiry or objection, in her safety box, while not conclusive of ownership, was found to count for her, and to overcome any prima facie inclination of evidence toward the plaintiff's side.

If the case stopped here, it would support the finding that testatrix had, in virtue of completed gifts, legal power to dispose of the personalty, to take effect at death.

Plaintiff argues, however, that, in the will itself, and in a note which testatrix wrote and filed with an earlier will, there is evidence rebutting any showing of unconditional delivery.

The will bears date June 7, 1924. A single paragraph contains two minor pecuniary bequests, gives six hundred dollars for the education of certain children, disposes, together with other things testatrix used and wore, of jewelry, wearing apparel and furniture, and makes thirteen bequests, aggregating $14,400.00, to charities.

Then comes this clause:

"The above is my part of the thirty thousand that I have helped earn and save."

Next, testatrix bequeaths fifteen thousand dollars to her husband. Additionally, in the same paragraph, she creates in him a life tenancy in her real estate, and vests remainder over in a charitable institution. Then are these words: "If there is more than thirty thousand at my death my half of what is over thirty thousand is to go to . . . (a charity)."

The earlier will was executed in 1897. This gave the property, whatsoever, except the homestead, to the husband. He was devised one-half the homestead; "my heirs the other half." The note, filed with the will, reads:

"You would not make any provision of the property, that I helped earn, for me saying that I could have my thirds and your relatives would have the rest. That is why I have had my will made as it is, in return for that *kindness* from you."

Of the bank accounts, only one had been opened in 1897. It had been started five years before, by depositing $250.00. The balance in 1897 is not shown. The last deposit was in 1927. Eventually, there was $2467.19. The next account was not begun until 1900. Up to the year 1897, Mrs. Holmes had neither stocks nor bonds. When she first acquired such was not in evidence.

The language of the quoted phrases, and of the note, is claimed to negative gifts, and to evince, on the part of Mrs. Holmes, the attitude that she had an interest in property, which she held as a trustee, by way of reward for personal services rendered her husband.

Fairly interpreted, the note merely recites that the husband's saying his wife should not have beyond her inheritable portion in his property motivated the terms of the will which the wife made. In no aspect does the note seem probative that bank books and other evidences of credits and securities acquired in twenty-four years intervening were held in trust or agency.

A claim for services would be untenable. That a woman assists her husband in his business, even in caring for money which is the product of their joint labor, does not make any part of the money her property. *Monahan* v. *Monahan*, 77 Vt., 133, 59 A., 169. All that Mrs. Holmes did in keeping the house, and assisting her husband, though incidental to his profession, would not alone entitle her to a share of his earnings, or of savings therefrom. *Sampson* v. *Alexander*, 66 Me., 182; *Berry* v. *Berry*, 84 Me., 541, 24 A., 957; *Bird Company* v. *Hurley*, 87 Me., 579, 33 A., 164. The enabling statutes do not absolve a wife from the duty to render to her husband such services in his household as are commonly expected of a married woman in her station of life. *Stevens* v. *Cunningham*, 181 N. Y., 454, 74 N. E., 434.

The majority of the court construe the language of the will, not as a disaffirmance of individual property, but as expressing (the testatrix herself writing the words,) the moral reason why she felt free to will to strangers virtually one-half in amount of her own

property. The evidential showing is that of a woman of mature years, reflecting the journey of matrimonial life, back to where effect and cause meet. She and her husband had long lived and toiled together; substantially all the property that she had had come to her from him.

She began her will on a blank such as stationers sell, by defining purpose to dispose of "my estate." No neutralizing influence, it is the majority view, was afterward exerted on those words.

This suit, let it be observed, was not instituted for the interpretation of a will, but to establish that certain personal estate had been confided to one person, for the use of, or upon a trust for, another. The will was but one piece of evidence, weighed and considered with all the rest. True, as to documentary facts, the court on appeal has the same functions as a single justice, and draws the proper inferences for itself. *Glover* v. *Waltham Laundry Co.*, 235 Mass., 330. But, in the instant case, the appellate court, though divided, infers as did the trial court. Findings and inferences resting upon the observation of witnesses who have testified orally, are not reversed unless plainly erroneous. This is because of superior opportunity in the court below for judging the weight of evidence.

Enough now to say, finally, that the evidence concerning the promissory note and the annuity certificate is not regarded as justifying the finding that was made. As to these, the appeal is sustained, and the decree reversed. As to all things else, the appeal, not having been well taken, is dismissed, and the decree affirmed.

On the effectiveness of mandate, an order may be made in the court below for a final decree which shall accord herewith.

*So ordered.*

Honorable John A. Morrill, an Active Retired Justice, sat at the argument of this cause, and participated in the consultation, but, at the writing of this opinion, his commission being expired by limitation of time, he takes no part.