AYCOCK *v.* BOTTOMS.

4-6032                                                    144 S. W. 2d 43

Opinion delivered October 14, 1940.

*Tiffany & Tiffany, Jos. J. Williams, Marvin J. Quillin* and *T. B. Vance,* for appellants.

*Burford & Sanderson* and *Henry Moore, Jr.,* for appellees.

BAKER, J. No effort will be made to furnish a statement complete in details. We adopt in part almost identical language of some of the brief writers, particularly as to those parts of the background out of which has grown this litigation. We are told that Mr. and Mrs. Bottoms were married in 1882 and they lived together for 42 years, until Mr. Bottoms died, September 3, 1924. They had no children. At the time of Mr. Bottoms' death considerable property had been amassed, practically all of which then appeared in the name of Mrs. Bottoms as owner. In 1917, Mr. Bottoms prepared a statement, deposited in a lock box accessible to both himself ·and his wife. It is proper, perhaps, to suggest that Mrs. Bottoms never saw or, at least, never read this paper during the lifetime of Mr. Bottoms. The instrument dated January 11, 1917, and signed ׳by Mr. Bottoms is the foundation upon which this suit was built. We copy said instrument:

"Texarkana, Arkansas,
"January 11, 1917.

"In the ·belief that at some time in the future a statement of the foundation of the means accumulated by myself and my wife might be of interest, I hereby make the following declaration:

"Prior to the year of 1885, I was employed as a clerk in various mercantile concerns at a small salary, but I always made it a rule to spend less than I made and saved a little money from year to year. In the year 1885, I became a partner in the lumber manufacturing firm of E. W. Frost & Company and contributed $4,000 to the firm's capital, the other members of this partnership being E. W. Frost and W. T. Ferguson each one of the three members having contributed the same amount of capital.

"Of the $4,000 capital contributed by me, I furnished $1,500 out of my own savings and my wife, Ida M. Bottoms, furnished $2,500 which amount she received from her father as a gift. The business of this firm was profitable and with the profits received from this enterprise I made other investments from time to time, which also proved profitable and the original investment has thus grown to a substantial sum.

"Since my wife contributed five-eighths of the amount of the original business investment out of which our present means have been accumulated she is in fact the owner in her own right of five-eighths of all the property we now have, whether the title to same stands in her name or mine.

"Transfers of property, acquired as above stated, which I have made or may hereafter make to my wife are therefore not gifts but conveyances of property actually belonging to her, to the extent of the proportionate amount of money furnished by her for the first investment above mentioned.

"(Signed)   G. W. Bottoms."

Counsel for appellee say that Mr. Bottoms' purpose in executing this instrument was to avoid payment of death taxes as to the particular part his wife already owned and which he planned to transfer and give to her. That there may have been such purpose motivating the preparation of this writing is possible, and an understanding of its meaning will, to a great extent, settle the most important of the disputed questions.

Plaintiffs insist that it was Mr. Bottoms' intention to create a trust affecting at least three-eighths of the property standing in the name of himself and his wife; that the other five-eighths belonged to the wife and that she had the absolute title thereto. Appellants have identified the instrument and have frequently mentioned it in their brief as a "declaration of trust."

It is their contention that from an original investment of $4,000, $2,500 of which Mrs. Bottoms furnished as money she received from her father, and $1,500, the earnings and savings of Mr. Bottoms, the entire fortune was accumulated, and that the questioned instrument denotes a gravely planned design on the part of Mr. Bottoms to retain as his own, three-eighths interest even though the legal title to all of the property might appear in his wife's name and after Mr. Bottoms' death his widow, the appellee here, with full knowledge of this intention as evidenced by this paper-writing concealed the fact that this three-eighths interest belonged to her deceased husband and appropriated all of said property and used it as if it were her own.

Plaintiffs tender proof that they did not know of this instrument allegedly so concealed, nor of its effect until a few months before the institution of this suit. This is a matter asserted as the reason or cause of their delay of approximately fourteen years before suing Mrs. Bottoms for the three-eighths interest claimed by them as constituting the estate of G. W. Bottoms.

They also charge that about six months after Mr. Bottoms death a letter was written to Mrs. Bottoms inquiring about the Bottoms estate. This letter was answered by Mr. Wheeler as her agent who untruthfully advised that Mr. Bottoms had given to Mrs. Bottoms his entire estate, but that Mrs. Bottoms intended to remember G. W. Bottoms' heirs in her will. They averred also that Mr. Wheeler made no mention of this declaration by Mr. Bottoms, which they discovered or learned of about fourteen years thereafter. The effect of this pleading is to charge that Mrs. Bottoms took over the

three-eighths of the property which was a trust fund and that her failure to disclose the fact of this trust in her hands, tolled the statute of limitations until the discovery of her fraudulent concealment. All plaintiffs were at the time of Mr. Bottoms' death more than 21 years of age.

Some of the controverted matters presented upon this appeal arise out of the fact that the appellant alleged that many of the facts they desired to establish, or prove were peculiarly within the knowledge of Mrs. Bottoms who had always had possession of all the papers and instruments of writing and muniments of title as to all matters related to the estate since the death of her husband, and that true and correct answers by her to interrogatories propounded by them would establish their claim to three-eighths of the value of the property whether held in the name of G. W. Bottoms or Ida M. Bottoms. This particular proceeding was under the provisions of the statutes now identified as § 1472, *et seq.,* Pope's Digest.

The defendant, Mrs. Bottoms, did not make categorical answers to the interrogatories propounded, but pleaded her inability to do so for the reason that during the long delay of approximately 14 years she had kept no books, and that she had now grown old and did not remember many details of facts, but she expressly reserved the right to make correct answers in lieu of any of said answers made by her that might later be determined to be inaccurate.

Appellants sought to have Mrs. Bottoms answers to the interrogatories stricken for the reason that they were modified expressions and not positive declarations and that having failed to answer directly and positively, appellants insisted on a summary judgment against Mrs. Bottoms on account thereof. The court overruled this motion for a summary judgment and this was urged as one of the errors of the trial court.

While we are inclined to agree with the appellants that ordinarily when interrogatories are propounded because the answers thereto are peculiarly within the

knowledge of the party questioned the proceeding is then within the contemplation of such statutes and untruthful or evasive answers should not be given, nor should they be accepted by the court, if it may reasonably be determined that the party answering is not acting in good faith.

But these provisions of the law, intended to simplify the procedure and to elicit facts, perhaps otherwise not discoverable, in order that justice and right might prevail, were not formulated to be used as an engine of oppression, to take away one's rights for the sole reason that the party questioned was unable to make reply satisfactory to the questioner.

As we understand the issues presented, as they arose from time to time in this rather lengthy proceeding, the chancellor deferred nearly all rulings until the final hearing upon the trial.

Whether that be true as to this particular issue, we find that the record discloses that Mrs. Bottoms, although she had at one time been very active, had attained the age of 79 years, was suffering with the physical weakness frequently present at that age and on account of that, a degree of senility; was nervous, and somewhat easily disturbed, and she was, by her physician, found to be in no condition to be present in court to give her testimony, and be cross-examined.

We know of no authority, and appellants have not cited any to the effect that the trial court might not exercise a sound judicial discretion, under the circumstances prevailing, and deny the motion of appellants for a summary judgment. To hold otherwise would establish a rule that the more helpless physically or mentally a party to a suit might be, or become, the more easily he could be stripped of his property by a summary judgment without error on the part of the trial court. Certainly, no such purpose was ever written into the law and we will not add such an one by interpretation. Mrs. Bottoms' answers to the interrogatories disclosed that she had, perhaps, something more than $400,000 which had been issued to her in stocks in

several different corporations. Most, if not all of these stocks had been originally issued to Mr. G. W. Bottoms as the first share-holder and he had in every instance to which our attention has been called, executed a written transfer to Ida M. Bottoms, his wife, signed the same and caused new stocks to be re-issued to her as the share-holder.

Some of these shares were sold and transferred to others while Mr. Bottoms was still living; others, she surrendered for re-issue according to changed conditions affecting the several corporations. For instance, a stock dividend was declared by the National Bank at Texarkana, Texas, and she received the full issue of the new stock and, later, this same corporation reduced its stock fifty per cent., and she surrendered her stock and took the fifty per cent. issue.

Perhaps the only exception to the foregoing statement is in regard to ten shares of stock in a railroad. It appears that in this instance Mr. Bottoms had made an assignment of the stock to Ida M. Bottoms, his wife, some time prior to his death, but the railroad corporation did not re-write and deliver this stock to her until after Mr. Bottoms had died. There were a great number of these stock transactions, but the transfers were not all made to Mrs. Bottoms at a time shortly before Mr. Bottoms' death; such transfers were begun about 1917, if not prior thereto, and were continued as a uniform course of conduct throughout the years until shortly before the death of Mr. Bottoms.

It is argued somewhat seriously, but we can not think very confidently, that this record does not disclose any actual delivery by Mr. Bottoms to Mrs. Bottoms, of this stock. At least it is urged that such delivery was not established as would be necessary to support a gift. Since nearly all of this stock appeared in Mrs. Bottoms' name as the owner thereof and was in her possession and had been for many years, it must appear reasonable that if appellants recover any interest therein, such recovery must be from Mrs. Bottoms personally. There is no separate G. W. Bottoms

estate in the hands of any administrator or otherwise. We are not forgetting appellants' suggestion that the stock certificates in themselves do not constitute property, but are only the evidences thereof. In truth, they are the very indicia of title and of course delivery of this indicia or token of title, though the matter may appear to the technically-minded investigator as constructive only, must be deemed as complete as would be the delivery of a horse by one who places the strap on a halter the horse is wearing into the hands of another. Indeed, it has been held quite frequently in many jurisdictions that the assignment of certificates of stock to a donee by a holder is tantamount to delivery of the stock, although manual delivery may be wanting. *Johnson* v. *Johnson,* 115 Ark. 416, 171 S. W. 475; *Williams* v. *Smith,* 66 Ark. 299, 50 S. W. 513; *Stewart* v. *Collins,* 36 Wyo. 210, 254 Pac. 137; *Thomas* v. *Thomas,* 107 Mo. 459, 18 S. W. 27; *Adams* v. *Button,* 156 Ky. 693, 161 S. W. 1100. Delivery may be made to a bailee, *Williams* v. *Smith, supra,* or it may be by token as by delivery of key to a dresser drawer and to a lockbox where valuables were kept. *Gross* v. *Hoback,* 187 Ark. 20, 58 S. W. 2d 202; *Carter* v. *Greenway,* 152 Ark. 339, 228 S. W. 65.

It is insistently argued that the conduct of Mr. Bottoms in transferring all these certificates of stock to his wife when considered in the light of his declaration dated January 11, 1917, does not evidence either the intention to give or the completed donation. We think it is apparent from the authorities above cited that the act of donation was completed for there was an intention established as well as delivery, rather than any proof of the creation of a trust. There is not the same strict degree of proof required as to delivery between members of a family as between strangers. *Gross* v. *Hoback, supra.*

This phase of the controversy makes it necessary to refer again to the declaration of January 11, 1917. If that instrument does not by terms create a trust then certainly none exists. We do not intend to say that Mr. Bottoms, in order to form a trust, must necessarily

have called it such, but we do say a trust fund must be set aside, either actually or constructively.

We have attempted to give consideration to this instrument, regarding it under the circumstances prevailing at the time it was prepared as well as observing the conduct of the parties affected by it, seeking their own consideration and interpretation; when so considered, and we are impelled to disagree with learned counsel representing the appellants.

It is apparent that Mr. Bottoms was possessed of more than an ordinarily facile power to make himself understood. We observe his language in the last paragraph of the declaration. We copy again: ''Transfers of property acquired as above stated which I have made or may hereafter make to my wife are therefore not gifts, but conveyances of property actually belonging to her to the extent of the proportionate amounts of money furnished by her for the first investment above mentioned.''

There was offered in evidence copies of some of these certificates of stock which Mr. Bottoms had caused to be transferred to his wife. They are outstanding as the sole and exclusive, written evidence of ownership and there is no word in said declaration that tends to constitute Mrs. Bottoms a trustee. There appears to have been no thought that Mrs. Bottoms would hold this property except as her own and, according to Mr. Bottoms' conception, he was donating to his wife only three-eighths interest. A few other matters merit consideration more on account of relative values involved than otherwise.

Some months prior to Mr. Bottoms' death, Mrs. Bottoms delivered to the bank about $250,000 in governmental securities. Mr. Bottoms was not present. Where these securities had been kept prior to that time can make little difference. If she had stored them in a place apart from the lock-box then in the name of both Mr. and Mrs. Bottoms, there was every indication of exclusive possession and consequent ownership. If she took them from the lock-box we must and do presume that Mr. Bottoms had knowledge thereof.

There is no hint in this regard that he objected to this course of conduct, in fact, we think he approved it. We find also that when money was deposited in the bank, the account was kept in the names of both Mr. and Mrs. Bottoms, and there was no doubt they intended the fund to be one held by entireties. The only evidence otherwise is the fact that the money was deposited in a bank located on the Texas side of Texarkana. The so-called "signature card" is a strong factor, if not an exclusive one, determining the rights of the parties. *Black* v. *Black,* 199 Ark. 609, 135 S. W. 2d 837; *Dickson* v. *Jonesboro Trust Co.,* 154 Ark. 155, 242 S. W. 57. In this regard, it will be remembered that Mr. and Mrs. Bottoms resided in Arkansas and their residence will probably be considered, for most purposes, the situs or location of their personal property.

One tract of land was bought by Mrs. Bottoms and deed was taken in her own name long before Mr. Bottoms died and evidence was undisputed that Mr. Bottoms arranged a loan upon the larger tract of land. He, himself desired that the mortgage should be made to Mrs. Bottoms for $60,000 which, he said, she was loaning to Mr. Adams. There was never any suggestion that he himself had any interest in it. It was finally deeded to Mrs. Bottoms as settlement of debt without foreclosure.

Of these larger items, the last or final one we discuss, they contend, is the purchase of the lots and the building of the home thereon. This took place several years before Mr. Bottoms died. The rule of law under such situations is so well settled that there will be no lack of uniformity of opinion among members of the legal fraternity. If he makes improvements upon his wife's land, the law presumes a gift to her of all such improvements. *Chambers* v. *Michael,* 71 Ark. 373, 74 S. W. 516; *Poole* v. *Oliver,* 89 Ark. 578, 117 S. W. 747; *Mayers* v. *Lark,* 113 Ark. 207, 168 S. W. 1093, Ann. Cas. 1915C 1094; *Doyle* v. *Davis,* 127 Ark. 302, 192 S. W. 229; *Ward* v. *Estate of Ward,* 36 Ark. 586; *Carpenter* v. *Gibson,* 104 Ark. 32, 148 S. W. 508; *Johnson* v. *Johnson, supra; Williams* v. *Smith, supra; Thomas* v. *Thomas,*

*supra; Adams* v. *Button, supra; Colmary* v. *Crown Co.,* 124 Md. 476, 92 Atl. 1051; *Matter of Bacock's Estate,* 85 Misc. 256, 147 N. Y. S. 168; *Sparks* v. *Hurley,* 208 Pa. 166, 57 Atl. 364, 101 Am. St. Rep. 926; *Slocum's Estate,* 83 Wash. 158, 145 Pac. 204; *Thomas* v. *Thomas,* 70 Colo. 29, 197 Pac. 243; *Holmes* v. *Vigue,* 133 Me. 50, 173 Atl. 816; 2 Bogert on Trusts, par. 459; 30 C. J. 705.

In addition to these continued activities of Mr. Bottoms, not only of delivery of possession, but of transfer of title to Mrs. Bottoms, we find that in his last days he told some friends and former business associates that he had nothing, but that he had given everything to Ida, or the ''boss'' as he sometimes called his wife. Such statements as these have been held admissible in a number of cases, and particularly in such cases wherein the remark or declaration did not tend to impeach any transfer. *Gross* v. *Hoback, supra; Haynes* v. *Gwin,* 137 Ark. 387, 209 S. W. 67.

So we think it may be conclusively found that even though there may have been some irregularity in the transfer of some of the stocks, the uniformity in the course of conduct considered in the light of this last declaration of Mr. Bottoms makes the proposition that transfers of all of Mr. Bottoms' property to his wife, the most of it long before he died, were not only intended as gifts, but, as such, actually completed by delivery of possession.

As to the $250,000 evidenced by governmental securities, there is little proof except the possession by Mrs. Bottoms, her exclusive control or dominion over them, the fact that Mr. Bottoms himself, so far as this record discloses, never offered any objection or protest in regard to the manner in which they were handled, and his final announcement that he was a poor man because he had given everything to Ida, must cause a conclusive presumption to arise that she was the actual owner thereof. *Foley* v. *N. Y. Savings Bank,* 157 App. Div. 868, 142 N. Y. S. 822; *In re Booles Estate,* 126 Wash. 632, 219 Pac. 4. Numerous other citations might be set out, but we think they are unnecessary. So we hold that Mr. Bottoms' conduct in the disposition of this property or what-

ever interest he had therein at any time should be considered as relative to his obligation to support and maintain his wife, and that there is little or no evidence of any intention to create a trust.

We have already had occasion to observe Mr. Bottoms' facility of expression and we are convinced that had he intended to create a trust, he would have left no doubt about that fact in his declaration.

This court said in the case of *Bogy* v. *Roberts*, 48 Ark. 17, 2 S. W. 186, 3 Am. St. Rep. 211: "Where the proof does not make it clear and manifest that a trust only was intended by the purchase, equity follows the law and leaves the estate with the child." *Carpenter* v. *Gibson*, 104 Ark. 32, 148 S. W. 508; *Keith* v. *Wheeler*, 105 Ark. 318, 151 S. W. 284. In the last cited case there is a rather potent presumption that a trust will not be established except upon positive evidence; that nothing short of clear, convincing and satisfactory evidence will show a trust.

In conclusion, we suggest that since the appellants have failed to establish a trust and have not proven satisfactorily any fact or course of conduct that would toll the statute of limitations, appellants are barred by their 14 years delay in the institution of their suit. Without further comment except to say that the law favors a period of repose, we cite, for consideration only, a few of our most recent announcements in that regard. Pope's Digest, Chapter 102; *Steele* v. *Gann*, 197 Ark. 480, 123 S. W. 2d 520, 120 A. L. R. 754; *Louisville Silo & Tank Co.* v. *Thweatt*, 174 Ark. 437, 295 S. W. 710.

Moreover, plaintiffs have emphasized with great force that Mrs. Bottoms, perhaps, did not give positive and categorical answers to their interrogatories and seek to penalize her therefor in a most certain and direct manner, yet we think it apparent from this record that Mrs. Bottoms had grown old, physically infirm, perhaps somewhat defective in memory. She had made rather generous donations during the 14-year period with the possible consequences resulting that she feels it necessary to retain the remainder of the estate to meet obligations

incurred and assumed by reason of the fact that during this long delay she had not only undisputed possession, but, apparently, exclusive right and title to use the property as she desired.

In a case of this kind the rule that laches not only follows and is controlled by the law but will restrain affirmatively any conduct that would impair her present standing and relation to all property so long regarded by her as her own and which view was apparently acquiesced in by the appellants will be applied. Under such changed conditions the defense of laches may be invoked and enforced in equity. *Walker* v. *Norton, Executor,* 199 Ark. 593, 135 S. W. 2d 315.

Although many details have been omitted from this discussion, the omission was occasioned, not through lack of consideration, but rather to shorten as much as possible and terminate our conclusions upon the more important and controlling factors.

It follows that the decree of the trial court is correct. The case is, therefore, affirmed.

GRIFFIN SMITH, C. J., disqualified and not participating; SMITH, J., dissents.