Samuel H. Hoestadter, J.
The plaintiff, as the surviving beneficiary of a group life insurance policy on the life of his late business associate, Jack Krohn, sues to recover the amount payable thereunder on death. The defense is that the insurance had been duly terminated more than a year before Krohn’s death.
The plaintiff Schwartz, Krohn, and one Steinlauf, were the sole stockholders, directors and officers of a New York corpora *368 tion, Ace Auto Luggage Co., Inc. (Ace), each owning one third of its total stock. Ace was a member of a trade association, Luggage and Leather Goods Manufacturers of America, Inc. (Association). By formal written agreement of September 14, 1955, between the Association’s officers, as trustees, its contributing employer members and the Association, provision was made for the establishment of a group life insurance fund. We refer herein interchangeably to the Trustees and the Fund. Pursuant to this agreement, a group life insurance policy was obtained in a company other than the defendant; we are not here concerned with that policy. Thereafter it was determined to increase the insurance coverage and in December, 1957, Ace sent a letter to the administrator, in which it applied for an additional $20,000 individual life insurance coverage, making a total of $25,000, for each of its three officers. The additional insurance was eventually obtained through the increase of the amount of insurance with the first company and the issuance by the defendant of its policy for $15,000 on the life of each person insured thereunder. The defendant’s policy was issued on the written application of the Trustees of the Fund, named the Trustees as the policyholder, and took effect on February 15, 1958. The policy conforms to the applicable requirements of section 204 of the Insurance Law.
Ace paid its proportionate share of the premiums on this policy for the period from February 15 to April 14, 1958. On the receipt of the Fund’s invoice, dated March 14, 1958, for the premium for the period from April 15 to May 14,1958, Steinlauf, Ace’s president, in a telephone conversation with the Fund’s administrator, told the latter that Ace wished to cancel its insurance unless it could obtain coverage of less than $25,000 on each of its officers. Steinlauf assigned the high premium cost as the reason for Ace’s position. The administrator replied that the Fund’s rules did not permit the Trustees to comply with Ace’s request and that the issued insurance had to be carried in full or not at all. By an exchange of letters of March 31 and April 2, 1958, between Ace and the administrator, the substance of the foregoing was confirmed, Ace’s letter returning “ Tour Invoice as of 3/14/58 for cancellation.” In answer to the Fund’s letter of April 2, 1958, Ace, under date of April 4, 1958, advised that ‘ ‘ we are cancelling our Insurance as per 4/14/58 as stated in your letter ” and regretting the inability to get the $5,000 coverage, The letters of March 31 and April 4, 1958 are on Ace’s letterhead and bear the typewritten signatures of Ace and of Steinlauf, as president, and in addition the latter’s signature in handwritten above the typewritten signature. The letters were *369 both entirely regular on their face and there was nothing in either their contents or appearance to suggest any infirmity in their authenticity or Steinlauf’s authority or otherwise to put the Fund on inquiry, especially in view of the earlier telephone talk between its administrator and Steinlauf. In reliance on the letter of April 4, 1958, the trustees, as the policyholder, transmitted to the defendant the three so-called I. B. M. “ change cards ” previously received from the defendant, containing appropriate particulars of the insurance on the lives of each of Ace’s three officers, with the notation placed thereon by the Fund ‘ ‘ Cancelled Insurance ’ ’ and the effective date of the change as April 14, 1958. When payment of the premium due April 15, 1958 on the group policy was made to the defendant, the Fund deducted therefrom the amount allocable to the three Ace policies. All the foregoing steps were taken by the Fund in good faith in justifiable reliance on Ace’s letter of April 4, 1958. On receipt of the change cards with the cancellation notation thereon and the nonpayment of the premium then due on the three Ace policies, the defendant, in reliance on the information so received from and the action taken by its policyholder, and in good faith marked each of the three Ace policies “ terminated ” and made the appropriate notations on its records to show their termination. The nonpayment of the claim asserted by the present plaintiff is due solely to such termination.
Ace did not, either within the grace period or at any time thereafter, pay, tender or offer to pay either the Fund or the defendant the premium due on April 15, 1958 or attempt to secure the reinstatement of its policies. Nor, so far as here appears, did Ace take action in disaffirmance or repudiation of the letter of April 4,1958, canceling the insurance, except insofar as the institution of an action by the plaintiff and Krohn on December 29, 1958 to recover on the Steinlauf policy may be regarded as disaffirmance. In that action the complaint raised the issue of Steinlauf’s authority to bind Ace by the letters of March 31 and April 4, 1958. This was, however, almost nine months after those letters were written and after the Fund and the defendant had already committed themselves to the termination of the insurance, an unreasonably long period within which to assert Steinlauf’s want of authority. Ace was a closely held corporation and, in the absence of contrary proof on behalf of the plaintiff—and there is no such proof whatever—it must reasonably be assumed that all three of its officers knew at the time of so important a transaction as the cancellation of insurance of $25,000 on each of their lives for which Ace was paying the premium. Any other inference defies common experience. *370 In any case, the nonpayment of the premium was an act necessarily committed by the corporation itself and it cannot escape responsibility for its consequences by the claim, not even shown to be founded in fact, that all the officers did not know of it. The plaintiff has offered no evidence whatever on this phase of the case; in the circumstances the court is permitted to take the defendant’s proof most strongly against the plaintiff.
Even were the validity of the plaintiff’s contention that neither Ace nor he is bound by the trust agreement, which unquestionably justified the Fund in acting as it did, accepted, for the sake of argument, the plaintiff may not recover. The Fund, not Ace, was the policyholder and, therefore, the defendant was entitled to rely in good faith on the information furnished to it by the Fund, as it has been found it did (Degnan v. Metropolitan Life Ins. Co., 178 Misc. 312). It follows that the defendant lawfully terminated the Ace policies and is not liable to the plaintiff on the policy on Krohn’s life.
The foregoing views make it unnecessary to pass on the defendant’s motion to dismiss for failure to make out a prima facie case. The plaintiff’s nine objections to testimony and exhibits are overruled, with exception to him in each instance. The defendant is entitled to a dismissal of the complaint on the merits, with costs, and the entry of judgment to that effect is directed. The foregoing constitutes the decision in accordance with section 440 of the Civil Practice Act.