Helen L. WHITFIELD, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE CO., a Corporation, Defendant.**

Civ. A. No. 585.

United States District Court
W. D. Arkansas,
Fayetteville Division.

Jan. 25, 1967.

E. J. Ball, Fayetteville, Ark., for plaintiff.

Chowning, Mitchell, Hamilton & Burrow, Little Rock, Ark., for defendant.

## OPINION

JOHN E. MILLER, Chief Judge.

Helen L. Whitfield, the plaintiff, commenced this suit by filing her complaint in the Washington Circuit Court on July

7, 1966. On July 28, 1966, the case was removed to this court by defendant, Metropolitan Life Insurance Company. On July 29, 1966, the court, upon motion of defendant, extended the time to answer until August 15, 1966. On August 12, 1966, the time was further extended to August 30, 1966, and answer was filed on August 27, 1966, within the time allowed.

There is now before the court cross motions for summary judgment. The plaintiff is a citizen of Arkansas and a resident of the City of Fayetteville in Washington County, Arkansas. The defendant is a life insurance corporation existing under and by virtue of the laws of the State of New York, and is a citizen of the State of New York.

Prior to January 28, 1959, W. C. Whitfield, Jr., hereafter referred to as Whitfield, operated the Whitfield Motor Company, a sole proprietorship.

On that date the business was incorporated, and all of the assets of the proprietorship were transferred to the corporation, Whitfield Motor Company, for 731 shares of common voting stock of the corporation. At all times since January 28, 1959, the Whitfield Motor Company had issued and outstanding the 731 shares of no par, common voting stock. Whitfield was the President and Chairman of the Board of Directors of the corporation from January 28, 1959, to December 8, 1965, the date of his death.

On and after June 1, 1959, Whitfield Motor Company was and is now in the service of distribution of automobiles and motor vehicles of the Oldsmobile Division of General Motors Corporation. On June 1, 1959, Whitfield qualified as a certificate holder under Group Policy No. 3200–G, and a certificate, Serial No. 431–50–7719, Account No. 332–04, was issued by defendant. The certificate provides:

"The Insurance Company certifies that under and subject to the terms and conditions of Group Policy No. 3200-G, insuring Certificateholders who are in the service of the Distribution Unit specified below, the Certificateholder named herein is insured on the effective date of this certificate for the amount of Life Insurance set forth below, which amount is subject to change in accordance with the provisions of the Group Policy.

(Distribution Unit)
WHITFIELD MOTOR COMPANY

Certificate holder WHITFIELD, WILLIAM C.    Serial Number
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

Account Number 332-04    Life Insurance $75,000.

Beneficiary   SEE ATTACHED CONTINGENT BENEFICIARY
FORM G. 500-A.                          Effective 6-1-59

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"The insurance evidenced by this certificate is subject in every respect to all of the provisions of said Group Policy No. 3200-G issued to General Motors Corporation. Certain provisions of the Group Policy relating to the Life Insurance are summarized on the following pages of this certificate. All relevant provisions of the Group Policy, whether mentioned or not, apply to the insurance evidenced by this certificate."

All premiums required to be paid by the terms of the certificate were paid promptly when due by Whitfield Motor Company from June 1, 1959, up to and including December 8, 1965, the date of the death of Whitfield.

On or about December 18, 1965, the plaintiff beneficiary gave notice and submitted proof of death of her deceased husband, Whitfield, to the defendant and demanded payment of the said $75,000.

The plaintiff filed her motion on November 2, 1966. Paragraphs numbered I and II of the motion are as follows:

"I.

"The answer of the defendant, Metropolitan Life Insurance Company, filed herein, the depositions of Gerald Jones, Helen L. Whitfield, Anne Jones, Robert Whitfield, J. W. Gould, W. C. Whitfield, III, and Bill Roby, and the affidavits of Gerald Jones, Anne Jones, Robert Whitfield and W. C. Whitfield, III, together with all of the exhibits to the depositions and affidavits, disclose as a matter of law that W. C. Whitfield, Jr. (the decedent), owned at the time of his death 62.1% of the issued and outstanding shares of stock of Whitfield Motor Company, that the insurance policy for $75,000.-00 was in full force and effect at the time of his death, and that the defendant, Metropolitan Life Insurance Company, is legally bound to the plaintiff, Helen L. Whitfield, in the amount of $75,000.00, together with interest, penalties and attorney fees.

"II.

"There are no genuine issues as to any material facts pertaining to the issuance of the insurance policy, the full and complete payment of the premiums due thereunder, and that W. C. Whitfield, Jr., (the decedent) owned more than 50% of the issued and outstanding shares of stock of Whitfield Motor Company at the time of his death."

The prayer of the motion is for judgment against defendant in the principal sum of $75,000.00, a statutory penalty of $9,000.00, and an allowance for a reasonable attorneys' fee, together with interest on said judgment.

Simultaneously with the filing of the motion for summary judgment the plaintiff served and submitted her brief in support thereof.

On November 15, 1966, upon motion of the defendant, the court extended the time until December 2 in which to file its reply brief and a cross motion for summary judgment, with supporting brief. The motion was filed on December 3, and brief in opposition to plaintiff's motion and in support of its motion was submitted. The motion is as follows:

"Defendant moves the court to enter, pursuant to Rule 56 of the Federal Rules of Civil Procedure, a summary judgment in defendant's favor granting defendant the relief prayed for in its answer on the ground that based upon the pleadings, depositions, and affidavits heretofore filed herein and the affidavit of Stephen Vincent Hamas filed herewith, there is no genuine issue as to any material fact and defendant is entitled to a judgment granting the relief prayed for in its answer as a matter of law."

In its answer the defendant admitted the jurisdictional allegations as set forth in the complaint and the issuance by the defendant to General Motors Corporation of the master policy, No. 3200–G, together with insurance certificate insuring the life of Whitfield in the sum of $75,000, and that William C. Whitfield, Jr., died on December 8, 1965.

In paragraphs 6, 8, 10, 11, 12 and 13, of the answer the defendant stated:

"6. It admits that all premiums required to be paid were paid promptly when due but defendant does not admit that the right premium was charged by it for the months of November, 1965, or December, 1965, or was paid on behalf of William C. Whitfield, and defendant does not admit the allegation of paragraph 6 that the certificate set forth in paragraph 6 was in full force and effect on the date of death of William C. Whitfield, which last mentioned allegation defendant denies.

\*     \*     \*     \*     \*     \*

"8. It admits that plaintiff gave notice and proof of death as required and that plaintiff has made demand on defendant for the sum of $75,000.-00; it admits that it has failed and refused to pay said sum to plaintiff; but defendant denies the allegation that it has failed and refused to pay any part of said sum or denied liability under said policy, and defendant further denies the allegation that it is indebted to plaintiff in the sum of $75,000.00 as alleged in paragraph 8 of plaintiff's complaint.

\* \* \* \* \* \*

"10. Further answering, defendant states that the group policy referred to in plaintiff's complaint contains the following provisions material to this action and to the insurance contract of William C. Whitfield:

"AMOUNT OF INSURANCE—

"The amount of insurance hereunder on any Certificateholder shall be in accordance with the Schedule of Benefits set forth below and any change in the amount of such insurance in accordance with said Schedule of Benefits shall become effective

"\* \* \* (ii) as to increases or decreases due to change in Ownership Class—the first day of the calendar month coincident with or next following the effective date of such change

"provided, in any case, that the Certificateholder is actively at work on the date such change in amount of insurance would otherwise become effective; if the Certificateholder is not then actively at work, such change shall become effective on the first day of the calendar month coincident with or next following the date of his return to active work \* \* \*

"SCHEDULE OF BENEFITS

"A. Amount of Life Insurance up to and including the last day of the calendar month in which the Certificateholder's 65th birthday occurs.

| Ownership Class | Distribution Units Insurance Class |
| --- | --- |
| | Class 3 |
| \* \* \* | |
| Certificateholder in a partnership or corporation whose ownership interest in the Distribution Unit, as determined and reported to the Company by the Employer is: | |
| 80% or greater | $100,000 |
| 50% but less than 80% | 75,000 |
| 20% but less than 50% | 50,000" |

"11. Prior to November 1, 1965, the said William C. Whitfield (Certificateholder) notified General Motors Corporation (Employer) that effective November 1, 1965, he would own less than 50 percent of the ownership interest of Whitfield Motor Company, and General Motors Corporation had determined such fact. Although General Motors Corporation had determined that William C. Whitfield's ownership interest in Whitfield Motor Company was less than 50 percent, said Corporation had not reported such fact to defendant (Company) at any time prior to William C. Whitfield's death; and only did so subsequent to his death. William C. Whit-

field after November 1, 1965, was active at work and owned less than a 50 percent ownership interest in Whitfield Motor Company, a distribution unit within the meaning of said group policy, and by reason of said facts was only eligible for $50,000.00 of insurance under said group policy. Defendant pleads the foregoing policy provisions, and the foregoing determination by General Motors Corporation as a bar to $25,000.00 of plaintiff's cause of action.

"12. Defendant states that it has tendered plaintiff the sum of $50,000.-00 and the sum of $57.50, representing an excess premium payment made on the insurance contract of William C. Whitfield for the months of November and December, 1965, but plaintiff has failed and refused to accept said sums.

"13. Defendant is entitled to a reformation of the insurance contract of William C. Whitfield, to provide that his life was insured under said policy for the sum of $50,000.00 only at the time of his death, which sum defendant admits owing to plaintiff, together with the excess premium mentioned hereinabove."

A review and study of the pleadings, depositions, exhibits and affidavits submitted by the parties show there is no genuine issue as to any material fact. The question before the court is purely a matter of law. The question is stated by the plaintiff in her brief in support of her motion as follows:

"The sole issue presented to this court for decision is whether the INSURED (William C. Whitfield) owned more than 50% of the issued and outstanding shares of stock of WHITFIELD MOTOR COMPANY on the date of his death on December 8, 1965. If INSURED owned more than 50% of the issued and outstanding shares of stock of WHITFIELD MOTOR COMPANY on December 8, 1965, the liability of METROPOLITAN to WHITFIELD under the policy is $75,-000.00 plus interest, penalties and attorney fees; but, if the INSURED owned less than 50% of the issued and outstanding shares of stock of WHITFIELD MOTOR COMPANY on December 8, 1965, the liability of METROPOLITAN to WHITFIELD under the policy is $50,000.00."

The defendant on its brief in opposition to plaintiff's motion stated the question as follows:

"If the court concludes that, as a matter of law, Mr. Whitfield's actual percent of ownership of the stock of Whitfield Motor Company on November 1, 1965, was less than 50%, then this case can be decided on this sole point. Defendant's position is that his actual ownership is not controlling. However, for the record, defendant does not concede that a transfer of stock which reduced Mr. Whitfield's percent of ownership interest in Whitfield Motor Company did not occur during his lifetime."

The defendant also stated:

"Mr. Whitfield's designated beneficiary bases her case upon a factual issue as to the certificateholder's actual percent of ownership. This she should not be permitted to do, because Metropolitan Life Insurance Company is entitled to rely solely upon what was reported to it."

The group policy was issued to General Motors Corporation subsidiaries and affiliated companies who were eligible and applied for the benefits under the policy and in accordance with the formula stated therein. The Whitfield Motor Company, the corporation, was the employer of Whitfield, to whom the certificate of insurance was issued and delivered. The primary requisite to support an application for benefits was that the person applying should be an employee of the distribution of General Motors automobiles and trucks, as was Whitfield Motor Company, the corporation. The amount of insurance was determined by a formula based upon the ownership of capital stock in the named insured, the distributor, by the applicant for the personal insurance. Under the terms of the master policy, insurance

credit points were determined by General Motors Corporation on the basis of the number of new General Motors car and truck sales made by the Distribution Unit, Whitfield Motor Company, and such determination was conclusive in fixing the amount of insurance to certificate holders. The schedule of benefits is set forth in subparagraph A of paragraph 10 of the answer heretofore set forth.

On January 28, 1959, the date of incorporation of Whitfield Motor Company, 547 shares of stock were issued to Whitfield, the certificate holder; one share was issued to Helen Louise Whitfield, plaintiff and wife of the insured; and 183 shares were issued to Gerald B. Jones and Martha Anne Jones, as tenants by the entirety. Thus, Whitfield became the owner of 74.82 percent plus of the capital stock of the Whitfield Motor Company on January 28, 1959.

The Whitfield Motor Company was very successful in the operation of its business and the value of the capital stock increased rapidly. In 1964 Whitfield decided that he would make further distribution to his children of the capital stock owned by him by issuing and delivering stock to them as Christmas presents. Accordingly, on December 7, 1964, he caused to be issued stock certificate 13 to Martha Anne Jones, a daughter, for 31 shares; certificate 14 for 31 shares to William C. Whitfield, III; and certificate 15 for 31 shares to Robert G. Whitfield. These three certificates, aggregating 93 shares, were delivered to his children on or about December 24, 1964, as a Christmas present. When this distribution was made, it left Whitfield the owner of 62.24 percent plus of the capital stock of the Whitfield Motor Company.

In preparation for the gift of additional shares to his children as a present for Christmas, 1965, Whitfield directed on January 4, 1965, that certificate 16 for 30 shares be prepared for Martha Anne Jones; certificate 18 for 30 shares for Robert C. Whitfield; and certificate 19 for 30 shares to William C. Whitfield,

III. These certificates remained in the corporation stock book. They were not issued and delivered to the persons named therein during Whitfield's lifetime, but were intended to be delivered by him as a Christmas present on or about December 24, 1965.

In the December 7, 1964, distribution Whitfield had caused to be written certificates 10, 11 and 12, each for 30 shares in his name, which he endorsed in blank, but did not remove them from the stock book. On January 4, 1965, when he decided to give to his children the 90 shares as a present for Christmas of 1965, he simply disregarded certificates 10, 11 and 12, and caused to be prepared in lieu thereof certificates 16, 18 and 19.

■ In order to make a valid gift inter vivos, the basic requirements are (1) the donor must possess mental capacity; (2) must have a donative intent; (3) must deliver the property to the donee or to someone else for the donee; and (4) the donee must accept the gift. In Stifft v. W. B. Worthen Co. (1928), 176 Ark. 585, 3 S.W.2d 316, the court at page 589 of 176 Ark., at page 318 of 3 S.W.2d said:

> "The elements necessary to constitute a valid gift inter vivos were stated by this court in Lowe v. Hart, 93 Ark. 548, 125 S.W. 1030, to the effect that the donor must be of sound mind, must actually deliver the property to the donee, must intend to pass the title immediately, and the donee must accept the gift. It will therefore be seen that a gift inter vivos cannot be made to take effect in the future, as such a transaction would only be a promise or agreement to make a gift, and, being without consideration, would be unenforceable and void, and considerations of blood or love and affection are not sufficient to support such a promise."

This rule seems to be universal and has been followed in Arkansas in many cases. See, Baugh v. Howze (1947), 211 Ark. 222, 199 S.W.2d 940, where the court at

page 228 of 211 Ark., at page 942 of 199 S.W.2d said:

"Conceding that Dr. Howze wanted this money to go to his sisters and brothers after his death, still unless he took proper or legal steps to carry out such intention, this court cannot act for him and give legal effect to the donor's wishes when the donor himself has failed to comply with the essential requirements necessary to effectuate the gift."

See, also, Bennett v. Miles, Admr. (1947), 212 Ark. 273, 205 S.W.2d 451; Elrod v. Broom (1949), 214 Ark. 548, 217 S.W.2d 246. A later case is that of Stratton v. Corder (1963), 236 Ark. 472, 366 S.W.2d 894, which reaffirmed the rule announced in Stifft v. W. B. Worthen Co., supra.

The defendant on its brief in opposition to plaintiff's motion for summary judgment contends that "an effective transfer of stock in Whitfield Motor Company, reducing Mr. Whitfield's percent of ownership therein to less than 50 percent, was made during his lifetime," and cites, among other cases, Aycock v. Bottoms (1940), 201 Ark. 104, 144 S.W.2d 43. In Aycock there was a contention that a trust had been created. The court held that a trust had not been created, but that a valid inter vivos gift had been made by the donor to his wife as donee. The court at page 111 of 201 Ark., at page 47 of 144 S.W.2d said:

"We think it is apparent from the authorities above cited that the act of donation was completed for there was an intention established as well as delivery, rather than any proof of the creation of a trust."

In further support of this contention, the defendant cites the case of Gross v. Hoback (1933), 187 Ark. 20, 58 S.W.2d 202, where the court, quoting from Baker v. Applen, 181 Ark. 454, 26 S.W.2d 109, said at page 25 of 187 Ark., at page 203 of 58 S.W.2d:

" 'The rule as to delivery of gifts is not so strictly applied to transactions between members of a family living in the same house, the law in such cases accepting as delivery acts which would not be so regarded if the transactions were between strangers living in different places; it not being required that the thing given should be removed from the common residence.' "

Here the children of Whitfield were not living in the Whitfield home. The stock certificates were in the custody of the Whitfield Motor Company or its accountant. In fact, there is nothing in the record to show that any one of the three children knew that their father intended to deliver to them stock certificates 16, 18 and 19 as a present during the Christmas holidays of 1965.

The Aycock case, supra, in support of the conclusion that the court reached cited Gross v. Hoback, supra, and Williams v. Smith (1899), 66 Ark. 299, 50 S.W. 513, in which the court at page 301 of 66 Ark., at page 514 of 50 S.W. said:

"The evidence in this case seems to us to clearly show that Manuel Teer made to his wife, Martha Teer, a gift of $700 in their lifetime, and that she was informed of it and accepted it. The money was delivered to J. E. & W. H. Lightle, with whom she had an account by her husband, who had the amount placed to her credit. What more could be required to constitute a valid gift from a husband to his wife? The delivery and the gift of the money were complete, and could not be revoked. 'If the gift be intended in praesenti, and be accompanied with such delivery as the nature of the property will admit, and the circumstances and situation of the parties render reasonably possible, it operates at once, and, as between the parties, becomes irrevocable.' Such delivery may be made to a bailee as effectually as to a donee in person. If there be only an intention to give, and no delivery, it will be inchoate and incomplete, however strong the expression of the intention may be, and the property does not pass. 'One is bound by his acts, but, without consideration, he is not bound to carry out his voluntary intentions, however firmly or earnestly he

may express them.' Nolen v. Harden, 43 Ark. [307,] 319, 320; Ammon v. Martin, 59 Ark. 191, [194], 26 S.W. 826; Howard v. [Wendham County Savings] Bank, 40 Vt. [597,] 598; Minor v. Rogers, 40 Conn. [512,] 518."

■ Reference has been made to the fact that certificates 10, 11 and 12, which were found in the stock book in the name of Whitfield were endorsed in blank by him. The defendant does not contend that the endorsement in anywise transferred or limited the title of Whitfield in certificates 10, 11 and 12. Even if these certificates in the form in which they appeared in the stock book could be construed as being securities, the endorsement had no effect whatsoever on the title of Whitfield.

Sec. 8–309 of the Uniform Commercial Code, Ark.Stat.Ann., § 85–8–309, states:

"An indorsement of a security whether special or in blank does not constitute a transfer until delivery of the security on which it appears or if the indorsement is on a separate document until delivery of both the document and the security."

In the Comment following the above section it is stated:

"There must be a voluntary parting with control in order to effect a valid transfer of an investment security as between the parties." Citing cases.

If the title to the shares of stock evidenced by certificates 16, 18 and 19 had not vested in the persons named therein on December 8, 1965, Whitfield was the owner of 62.24 percent of the capital stock at the time of his death.

It will be noted that in the excerpt heretofore set forth from defendant's brief in opposition to plaintiff's motion, the defendant stated:

"Defendant's position is that his [Whitfield's] actual ownership is not controlling. However, for the record defendant does not concede that a transfer of stock which reduced Mr. Whitfield's percent of ownership interest in Whitfield Motor Company did not occur during his lifetime."

The certificate of insurance that was issued to certificate holder Whitfield has heretofore been set forth, and it will not be restated here. The defendant further contends that the beneficiary, the plaintiff, "bases her case upon a factual issue as to the certificate holder's actual percent of ownership. This she should not be permitted to do, because Metropolitan Life Insurance Company is entitled to rely solely upon what was reported to it."

On August 23, 1965, Whitfield wrote Mr. George Carr, Zone Manager, Oldsmobile Division, Oklahoma City, Okla., as follows:

"Dear George:

"Enclosed are the applications for financial interest in our dealership for my children. For all practical purposes the business will go on exactly as it has in the past. I am passing out stock to get it out of my estate.

"Will try to keep and build an automobile dealership that Oldsmobile will be proud of."

Enclosed with that letter were applications for financial interest signed by Anne Whitfield Jones, daughter, and William C. Whitfield, III. Also enclosed was "Dealer Statement of Ownership, Financial Interest and Active Management," which appears to have been signed by W. C. Whitfield, President, and Gerald B. Jones, Vice President. Their signatures appear over the date "8–18–65," and in the lower lefthand corner of the statement appears the following: "Approved as represented by dealer, Oldsmobile Division, General Motors Corporation. Signed G. H. Carr, Zone Manager. Date 10–12–65."

It is stated in the statement:

"The undersigned Dealer hereby represents to Oldsmobile Division, General Motors Corporation, that the following information pertaining to the management, the direct and indirect ownership and the current capital status of the undersigned Dealer is true, accurate and complete as of August 23, 1965, and the undersigned Dealer understands that any misrepresentation

in connection therewith constitutes cause for termination of the undersigned Dealer's Oldsmobile Dealer Selling Agreement which will be or was effective as of November 1, 1965, under subsection B(4) (c) of Section 14 thereof:"

The statement shows Whitfield's percent ownership of the stock to be 49.74 percent.

The correspondence, while directed to Mr. Carr, seems to have been handled by W. E. Roby, who was the Business Management Manager in the Zone Office in Oklahoma City, of the Oldsmobile Division. Upon receipt of the letter and the dealer statement of ownership, Mr. Roby, Zone Management Manager, telephoned Whitfield and informed him that the proposed stock redistribution would cause his insurance coverage under the group plan to be reduced. Whitfield stated to Mr. Roby that he planned to dispose of his stock in spite of the reduction in coverage.

According to what appears to be the standard procedure of the Zone Office, an inter-corporate form containing the information supplied by Whitfield was prepared and sent to the home office of Oldsmobile Division of General Motors in Lansing, Michigan, where the proposed stock transfer and the dealer selling agreement were approved on or about October 23, 1965. The home office of the Oldsmobile Division, by Form G1686-GMB, advised the defendant, Metropolitan, on January 6, 1966, of the proposed transfer of the capital stock of the Whitfield Motor Company.

Prior to the receipt of the form the defendant had received a letter, dated December 18, 1965, writen by Gerald Jones, son-in-law of Whitfield, giving notice and enclosing proof of death of Whitfield. When the defendant received the proof of death, it contacted the Oldsmobile Division on December 20, requesting verification of Whitfield's percentage of ownership on the day preceding the date of his death. General Motors answered the defendant's request on December 21, 1965, and informed the defendant that Whitfield's percentage of ownership interest under the proposal that had been accepted by Oldsmobile was 49.74 percent. The defendant was apparently not satisfied with the information, and on December 23, 1965, again telegraphed the Oldsmobile Division, and asked the effective date of the decrease of Whitfield's percentage of ownership. In response to the request, Oldsmobile advised that the change in ownership had occurred on November 1, 1965. Following this information, the defendant on January 6, 1966, reduced retroactively the insurance coverage of Whitfield to $50,000, effective November 1, 1965, and tendered a refund of the premiums for the months of November and December 1965, that had been paid on insurance of $75,000. The tender of the premiums was not accepted by the Whitfield Motor Company or by the beneficiary, Helen Louise Whitfield.

The certificate of insurance issued to Whitfield provides that it was issued subject to the provisions of the group policy. The group policy was not offered by either the plaintiff or defendant in support of their motions, but in the consideration of the case, the court requested the attorneys to submit a copy of the group policy, which was done. The court has examined it but has found no provision in the group policy of any material aid in determining the question before the court. The group policy, as submitted, appears to have been originally issued on June 25, 1928. It has been amended from time to time and added to until it consists of several hundred pages. Prior to March 16, 1956, the amount of insurance granted to persons employed by the distributor was based upon their wages or salaries, but on March 16, 1956, by Amendment 96, a schedule of special benefits was provided for the benefit of the proprietor where the distribution unit was a sole proprietorship, or if a corporation, the benefit was extended to the owners of the capital stock, the amount depending upon the percentage of the total stock owned "as determined and reported to the company [defendant]

by the employer [General Motors]." The same provision appears in Amendment 97, which was adopted on August 20, 1956.

In 1 Appleman, Insurance Law and Practice, § 41, p. 51, it is stated:

" * * * So far as the group feature is concerned, the persons insured may vary from time to time as the composition of the group is altered; but the fundamental feature, of group entity, never varies. Courts have emphasized the fact that low premium rates characterize these contracts, the employee being treated as a third party beneficiary.

"While new problems necessarily arise because of the group features of this insurance, it is clearly held that the ordinary principles of personal insurance apply to the construction of these contracts. The tendency of a few cases is, apparently, to consider this form of insurance as something radically different from other coverages and to engender new principles to apply thereto. This, the writer feels, should not be the case. It is certainly true that some radically new elements are introduced in connection with these insurances; but, since they are new, the courts may treat them as such and develop principles to apply thereto while retaining the usual rules of construction applicable to other phases of personal insurance. Thus, little conflict as to general principles of law, would be properly considered."

■ Without question, policies of insurance should receive a liberal and reasonable construction in favor of the beneficiary. If any doubt exists as to the construction of the contract, it should be interpreted against the party who has drawn the contract, that is, the insurance company. In Fowler v. Unionaid Life Ins. Co. (1929), 180 Ark. 140, 20 S.W.2d 611, the court, beginning at the bottom of page 144 of 180 Ark., page 613 of 20 S.W.2d, said:

"It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered not from particular words and phrases but from the whole context of the agreement. In fact, it may be said to be a settled rule in the construction of contracts that the interpretation must be upon the entire instrument and not merely on disjointed or particular parts of it. The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause. Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument. The contract must be viewed from beginning to end, and all its terms must pass in review, for one clause may modify, limit, or illuminate the other. Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized, if that course is reasonably possible. Each of its provisions must be considered in connection with the others, and, if possible, effect must be given to all. A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions. American Ins. Union v. Rowland, 177 Ark. 875, 8 S.W. (2d) 452; 6 R.C.L. 837, 838."

See, also, Metropolitan Life Ins. Co. v. Guinn (1940), 199 Ark. 994, 136 S.W.2d 681.

■ The learned attorneys for the defendant in support of its motion for summary judgment have cited Hanna v. Mt. Vernon Life Ins. Co. of N. Y. (8 Cir. 1958), 260 F.2d 244, and Metropolitan Life Ins. Co. v. Thompson (1942), 203 Ark. 1103, 160 S.W.2d 852, in support of the defendant's contention that in the absence of fraud or collusion with the employer, the insurer has a right to rely upon information it has received from the

employer as to the employees covered by the group insurance. The court agrees with that statement, but the insurer, Metropolitan, received no information from the employer or anyone that there had been any change in the status of the employees covered by the group insurance prior to the death of Whitfield, as indeed there had been no change in the percentage of ownership of capital stock of the distributor.

The group policy provides on page 1 that the "employer" referred to therein is "General Motors Corporation, Subsidiaries and Affiliated Companies." The defendant also cites Schwartz v. Mutual Benefit Life Ins. Co., 28 Misc.2d 367, 212 N.Y.S.2d 359, and Fidelity & Casualty Co. of N. Y. v. Metropolitan Life Ins. Co., 42 Misc.2d 616, 248 N.Y.S.2d 559. The court has read these decisions with some care and is of the opinion that neither of these decisions affects or controls in any way the decision of the question before the court.

The Supreme Court of Arkansas has considered several cases involving group insurance, but none of them aid the court in anywise in determining the problem before it.

The defendant, in its policy, chose to make the source of its information the report of its insured, General Motors Corporation or subsidiaries, relative to the determination of the amount of insurance to which a stockholder of the Whitfield Company was entitled. When a change in the percentage of ownership occurs, General Motors, or its affiliates, are required to certify the ownership interest in the distribution unit. No change can be made legally in the amount of the insurance until General Motors or its affiliates certify the percentage of the ownership interest of the employees in the distribution unit.

On January 6, 1966, after the defendant had received the information from the Oldsmobile Division of General Motors, it retroactively reduced on its books the amount of insurance from $75,000 to $50,000.

At the time the defendant reduced the amount of insurance on its books to $50,000, the interest of the beneficiary had vested, and the defendant became liable to the beneficiary for the face amount of the certificate.

As a part of the certificate of insurance issued to Whitfield, the defendant in a summary of the provisions of the group policy states:

"If the certificateholder dies while insured under the group policy, the amount of life insurance in force on account of the certificateholder at the date of his death shall be paid to the beneficiary of record."

It is further provided:

"The certificateholder may change his beneficiary at any time upon written receipt accompanied by this certificate for indorsement. Consent of the beneficiary shall not be requisite to any change of beneficiary."

There was no change in the beneficiary, and at the time of the death of Whitfield the plaintiff was the named beneficiary.

In Vol. 29A, Am.Jur., Insurance, § 1640, at page 722, the learned authors state:

"Clearly, upon the death of the insured without changing the beneficiary in fact or legal effect, the fixed rights of the beneficiary cannot be affected by any subsequent act of the insurer."

In Grimmett v. Roberts (1937), 193 Ark. 1179, 100 S.W.2d 961, the Supreme Court of Arkansas at page 962 said:

"But appellant's exceptions show that the wife survived the husband. It makes no difference that they both suffered fatal injuries from 'common disaster.' Surviving the husband as beneficiary in his policy her rights became vested at the time the husband died."

There is no controlling statute in Arkansas to the contrary, and the rights of the beneficiary attach and become vested immediately on the death of the insured. Prior to the death of the insured, a beneficiary has no vested in-

terest, since the mere expectancy of a beneficiary may be defeated by change if the policy so provides. Absent any change, as in this case, interest of the plaintiff vested on December 8, 1965, and the defendant had no right under the terms of the policy to alter in any way her interest in the certificate. See, Johnston v. Kearns (1930), 107 Cal.App. 557, 290 P. 640; and Johnson v. Johnson (5 Cir. 1943), 139 F.2d 930, 151 A.L.R. 268.

There was no representation made by Whitfield, the holder of the certificate of insurance, that a change in the percentage of the ownership of the capital stock had taken place at the time he opened negotiations with the Oldsmobile Division of General Motors for a dealer's selling agreement. Without question, it was the intention of Whitfield to give to his children, Martha Anne Jones, Robert C. Whitfield, and William C. Whitfield, III, 30 shares each of the capital stock of the Whitfield Motor Company as a present on Christmas, 1965, as he had done during the preceding Christmas holidays, but the fact remains that the gift was not made, and Whitfield on the date of his death owned 62.24 percent plus of the capital stock of the Whitfield Motor Company.

The act of the defendant in reducing the amount of the insurance upon receipt of information from Oldsmobile Division of General Motors subsequent to the death of Whitfield was contrary to the plain provisions of the group policy. Suppose that Whitfield, in the autumn of 1965 prior to his death, had represented to the Oldsmobile Division that on November 1, 1965, his percentage of ownership in the Whitfield Motor Company would be increased by a gift to him, or by purchase, to 80 percent or greater, and before he had acquired title to a sufficient number of shares to raise his ownership to 80 percent or more, he had died. Would his beneficiary, under those facts, be entitled to recover $100,000 instead of $75,000? To propound the question is to answer it, and so it is under the facts in the instant case. Certainly the defendant could not be compelled to

pay $100,000 because there had not in fact been any change in the percentage to justify the payment of $100,000 insurance. So it is here. There was no actual or legal change in the ownership of the capital stock prior to his death which reduced Whitfield's percentage below 50 percent.

Ark.Stat.Ann., § 66-3238, (1966 Repl.), provides:

"In all cases where loss occurs and the * * * life * * * insurance company * * * shall fail to pay the same within the time specified in the policy, after demand thereof, such person, firm, corporation and/or association shall be liable to pay the holder of such policy or his assigns in addition to the amount of such loss, 12 percent (12%) damages upon the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of said loss; said attorney's fee to be taxed by the court where the same is heard on original action, by appeal or otherwise, and to be taxed up as a part of the costs therein and collected as other costs are, or may be by law collected".

■ Under the statute and the decisions of the Supreme Court of Arkansas, the plaintiff is entitled to recover 12 percent of the total loss, or $9,000 as damage. Continental Cas. Co. v. Vardaman (1960), 232 Ark. 773, 340 S.W.2d 277.

■ The plaintiff has asked in her complaint for the allowance of $18,750 as an attorney's fee, but the court is of the opinion that under the pleading a reasonable attorney's fee to be taxed as costs is $10,000.

The court is of the opinion that the motion of plaintiff for summary judgment should be granted and the motion of defendant for summary judgment should be denied; that plaintiff is entitled to recover $75,000, the face amount of the certificate of insurance; $9,000 damages; and a reasonable attorney's fee in the sum of $10,000; making a total of $94,000, together with all court costs, and a judgment in accordance herewith is being entered today.