**Ceicel D. BROWN and William D. Brown, Plaintiffs,**

**v.**

**Thomas P. SCOTT, Defendant.**

**No. F-70-C-21.**

United States District Court,
W. D. Arkansas,
Fayetteville Division.

May 12, 1971.

Miss Amy Burkett, Biloxi, Miss., David R. Boatright, Ft. Smith, Ark., for plaintiffs.

Crouch, Blair, Cypert & Waters, Carlos B. Hill, Fayetteville, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

On August 10, 1970, plaintiffs commenced this suit to recover judgment against defendant in the sum of $33,995.-91, and alleged:

"2.   Defendant owes plaintiffs Thirty-three Thousand, Nine Hundred Ninety-five and 91/100 Dollars ($33,995.91) for money lent by plaintiffs' legator, David A. Burkett, to defendant on the following dates:

| | | |
|---|---|---|
| "Count 1: Money lent on March 5, 1969 | | $15,000.00 |
| Upon which defendant has paid | | 451.00 |
| Leaving balance owed | | $14,549.00 |
| "Count 2: Money lent on August 26, 1969 | | $19,446.91 |
| Total | | $33,995.91" |

On October 29, 1970, the defendant filed his answer, in which he denied that he is in any way indebted to the plaintiffs and further denied that he was in any way indebted to plaintiffs' legator, David A. Burkett.

The plaintiff Ceicel D. Brown is a citizen and resident of the State of Louisiana, and plaintiff William D. Brown is a citizen and resident of the State of Mississippi. The defendant Scott is a citizen of Arkansas and resides in the Western District. The matter in controversy exceeds the sum of $10,000, exclusive of interest and costs. Thus, jurisdiction is established by diversity and the amount in controversy, 28 U.S.C. § 1332.

David A. Burkett, prior to his death on September 24, 1969, was a citizen of

Arkansas and resided in the City of Springdale, Arkansas. On January 9, 1969, he duly executed a last will and testament in which he directed that his executor pay all of his just and lawful debts. In paragraph 2 he stated that, not having any descendants, he gave, devised and bequeathed to William S. Horton of McAlester, Oklahoma, an undivided one-third interest in and to certain real property in the County of Pittsburg, Oklahoma. Paragraph 3 of the will reads as follows:

"All the rest, residue and remainder of my property, real, personal or mixed, wherever situate and of whatsoever character, I devise and bequeath unto my nephews, Ceicel D. Brown of Shreveport, Louisiana, and William D. Brown of Biloxi, Mississippi, share and share alike; that if either of them be deceased, to the heirs of their body per stirpes."

In paragraph 4 he stated that in making the devises and bequests, he was not unmindful of his sisters, Amy Burkett and Georgia Krieger, each of Biloxi, Mississippi, nor of any of his other relatives whether specifically mentioned or not. In paragraph 5 he appointed the First State Bank of Springdale, Arkansas, as executor of the will.

On March 30, 1970, the executor filed an inventory showing a total value of personal property to be $37,569.91. On July 16, 1970, the Probate Court of Benton County, Arkansas, upon petition of the executor, entered a final order of distribution, which directed that the cash on hand, household goods and contents of a lock box be turned over to Ceicel D. Brown and William D. Brown and be divided equally between them. The order further provided that all instruments pertaining to "the two choses in action should be turned over to the legatees named in the will." The assignment by the executor referred to the two choses in action as:

"1—an account for $15,000.00, evidenced by one ledger sheet in the books kept in the regular course of business by David A. Burkett, the said ledger sheet showing that the $15,000.00 was loaned on May 5, 1969, by the said David A. Burkett to Tom Scott, and was repayable at the rate of $200.00 per month; that the $200.00 per month included interest at 6% per annum, and on which account three payments of $200.00 were made by Tom Scott, leaving a balance due at the time of the death of David A. Burkett of . . . . . . . .
. . . . . . . . . . . . . . . . . . . . $14,549.00

"1—against the said Tom Scott evidenced by two cashier's checks; one drawn by D. A. Burkett on his account of savings in the First National Bank of Springdale, Arkansas, in the amount of $9,-373.33, and the other drawn by D. A. Burkett on his account of savings in the First State Bank, Springdale, Arkansas, in the amount of $10,073.58, both of which were evidenced by cashier's checks which were endorsed by Burkett and cashed by Tom Scott, on or about August 26, 1969, and the total of these 2 cashier's checks endorsed by Tom Scott amounted to . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . $19,446.91."

The cause was tried to the court on March 30, 1971, and at the conclusion of the testimony the parties were directed to submit briefs which have been received and considered, along with all the exhibits.

Plaintiffs make three basic contentions. First, they argue that "under the law and the evidence, they have proved their case, not only by a preponderance of the evidence but beyond a reasonable doubt." Secondly, that "defendant not having denied that the money was lent, that allegation is admitted, and having failed to plead any matter constituting an avoidance or affirmative defense any such defense is waived." Thirdly, that "even if permitted to assert the affirmative defense of gift, defendant has failed to prove the alleged gifts."

Since the second contention deals with a procedural question, the court feels that it should be considered separately from the other contentions and disposed of first. This contention is clearly without merit.

Rule 8(f), Fed.R.Civ.P., provides:

"All pleadings shall be so construed as to do substantial justice."

Professor Moore, in 2A Moore's Federal Practice, 2d Ed., ¶ 8.34, p. 1895, states:

"This mandate is the heart of the rules on pleadings. Its meaning is well stated in a Supreme Court decision handed down just after the Federal Rules had been submitted to Congress. Mr. Justice Black spoke for a unanimous Court: 'Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end.'"

See, Maty v. Grasselli Chemical Co. (1938), 303 U.S. 197, 200, 58 S.Ct. 507, 509, 82 L.Ed. 745, 748.

In addition to this, the defendant denied that he is in any way indebted to plaintiffs or indebted to the plaintiffs' legator, David A. Burkett, in his answer to plaintiffs' complaint.

In considering and determining the first and third contentions of plaintiffs, it is necessary to refer to the facts as established by the pleadings, interrogatories and answers thereto, together with the requests for admissions and the responses thereto.

The following shall constitute the court's findings of fact and conclusions of law as contemplated by Rule 52, Fed. R.Civ.P.

The deceased, D. A. Burkett, was a retired civil engineer and a close friend of defendant, Thomas P. Scott, and his wife, Louise. Burkett became acquainted with the Scotts during 1964 when Mrs. Burkett began patronizing the beauty shop operated by Mr. and Mrs. Scott. Later Mrs. Burkett became ill, was placed in a nursing home, and subsequently died in May of 1968. During Mrs. Burkett's illness and after her death, Burkett and the Scotts became close friends and associates. During this time Burkett rented an apartment from the Scotts which was in close proximity to their place of business. The defendant Scott and Burkett made numerous fishing trips together, and Burkett spent a considerable amount of time with the Scott family. Later, during 1968, Burkett moved from his apartment and took up residence nearer Beaver Lake. He shortly returned to Springdale and rented a duplex across the street from the Scott residence. Sometime toward the end of 1968 Burkett moved into a house trailer when the duplex became no longer available. The Scotts were at this time contemplating construction of a new house. It was decided that an addition to the house which was planned would be constructed for Burkett to live in.

Burkett did not get along well with any of his relatives. The plaintiff William D. Brown is a nephew of Burkett, and was present at the trial but did not testify as to any family relationship. The feelings of the deceased, Burkett, toward his family were expressed to Carlos Hill, his attorney, when Mr. Hill was drafting a will for Burkett. Burkett told Mr. Hill that he wanted to provide for William Horton, his brother-in-law, to receive the interest owned by Burkett in some real property in Oklahoma. Burkett further stated that he planned to dispose of his assets prior to his death. Only at the insistence of Mr. Hill were the names of his two nephews, plaintiffs in this action, placed in the will. The names were placed in the will for the sole reason that Mr. Hill, as attorney for Burkett, felt that some residuary legatee should be named. This will was revoked prior to the death of Burkett by the will in evidence as plaintiffs' Exhibit 1.

At some time after the death of his wife but before moving to the trailer

park, Mr. Burkett made a trip to Mississippi for the purpose of deciding whether or not to reside with his two sisters there. After a short period of time he returned to Springdale and stated that he had very little desire to remain in their company.

On May 5, 1969, Burkett made a $15,000 withdrawal from his savings account in the First National Bank of Springdale, Arkansas. A bank money order from the First National Bank was issued to Thomas Scott in the amount of $15,000. It was endorsed by Scott and deposited into a savings account in the First National Bank of Springdale, Arkansas, on May 5, 1969. The savings account is in the name of Thomas P. Scott for Dana and Dinia Scott, the adopted children of Mr. and Mrs. Scott. Mr. Burkett delivered the check to Scott at his place of business in the presence of Mrs. Scott.

On August 26, 1969, Mr. Burkett withdrew the remaining $9,373.33 from his savings account at the First National Bank of Springdale, Arkansas, and obtained a bank money order from said bank made payable to D. A. Burkett. Also, on the same date, he withdrew $10,073.58 from a savings account in the First State Bank of Springdale, Arkansas, and obtained a cashier's check payable to D. A. Burkett. On the same day Burkett went to the defendant Scott's place of business and in the presence of Larry Stevens, a friend of Scotts who had formerly dated Scott's daughter, endorsed these two checks which totaled $19,446.91. He then delivered the checks to the defendant Scott, who deposited them into the savings account which he maintained for his children in the First National Bank of Springdale, Arkansas. Mr. Burkett stated to his neighbor, Oscar B. Roy, that he had loaned a friend money to build a house, but no records or any other evidence to substantiate this were introduced.

No evidence was offered by the plaintiffs as to the nature of the transaction involving the $19,446.91. There is only the allegation in plaintiffs' complaint stating that the money which changed hands between Burkett and Scott was a loan. On the 23rd of September, 1969, Mr. Burkett was injured in an explosion which destroyed his trailer, and on September 24, 1969, he died as a result of these injuries.

In 58 C.J.S. Money Lent § 7a at page 881, it is stated:

"In actions for money lent, as in other actions, plaintiff bears the burden of establishing by a fair preponderance of evidence every disputed fact that constitutes an element of his right to recover, including the loan, the maturity thereof, and the contract for repayment. * * * *Plaintiff is not relieved of the burden of proving that the transaction in question was a loan merely because defendant, instead of simply denying the loan, alleges that it was a gift.*" (Emphasis supplied.)

The issue before the court requiring further consideration is the transaction involving the alleged loan in the amount of $15,000 to Thomas P. Scott. After Burkett's death a ledger sheet and a sheet of paper containing some computations, plaintiffs' Exhibits 14 and 15, were found by the executor of the estate in a small locked box which was inside Burkett's trailer. On its face, the document reflects a loan to "Tommie Scott" in the amount of $15,000 on May 5, 1969, and that three payments of $200.00 each were made on June 5, July 5, and August 11, 1969. The computation shows the interest on $15,000 at 6 percent per annum. It also reflects the interest on this amount after payments of $200 were made. From the evidence before the court there is some doubt that plaintiffs' Exhibit 14 and 15 are in the handwriting of the deceased. Even if conclusively proven to be in the handwriting of Burkett, they are not sufficient to establish that the money changed hands as a loan in view of the other evidence offered to the court. The plaintiffs introduced various bank records which purported to prove that Burkett received

the payments on the alleged loan and that Scott had made one such payment. The only proof that Scott had made such payment was a check dated August 29 to D. A. Burkett in the amount of $200. The defendant Scott testified that this was in payment for some survey work done by Burkett. There was no contradictory testimony offered, nor was there any proof offered as to the source of the other two alleged payments.

■ The question for the court is whether the transaction between the defendant, Scott, and Burkett was a loan or an inter vivos gift.

In 38 C.J.S. Gifts § 6, p. 784, a gift is distinguished from a loan: ·

"The question as to whether a transaction having all the other requisites of a gift inter vivos is really a gift or a loan is determined by the intention of the transferor, which must be gathered from all of the facts and circumstances attending the transfer of the property."

This transaction does have all the requisites of a gift inter vivos.

In Whitfield v. Metropolitan Life Ins. Co. (W.D.Ark.1967), 262 F.Supp. 977, at page 982 the court stated:

"In order to make a valid gift inter vivos, the basic requirements are (1) the donor must possess mental capacity; (2) must have a donative intent; (3) must deliver the property to the donee or to someone else for the donee; and (4) the donee must accept the gift."

See, also, Stifft v. W. B. Worthen Co. (1928), 176 Ark. 585, 3 S.W.2d 316.

The mental capacity of the donor in this case was not questioned. It was obvious that the alleged donor had strong personal feelings toward the defendant, Scott, and did not particularly care for his own family. The property was delivered to Scott and Scott did accept the gift. The intention of the transferor must be determined from the evidence before the court. In the case of Jensen v. Housley (1944), 207 Ark. 742, 182 S.W.2d 758, the fact that the donor had strong affection for the donee was considered in determining the intent of the transferor.

The testator or legator, as designated by plaintiffs, was a man of education and considerable business experience. He was industrious and continued to work intermittently as a civil engineer or a surveyor even when it was apparent that there was no financial necessity for such exertions. After his wife's death, he was lonely and apparently the only persons who exhibited any special interest in him or in his welfare were Mr. Scott, the defendant, and Mrs. Scott. He found the welcome mat at their door at all times. The evidence reveals that he considered himself really as a member of their family, and was intending to live in their new home in an apartment he specially designed.

The plaintiffs offered no testimony showing or tending to show that Mr. Burkett did not do exactly what he intended to do. There was no coercion, no overreaching, and no undue influence, and this court cannot, in view of all the evidence and circumstances, find other than that the gifts of this money were intended by the donee and were in fact gifts which were duly accepted.

Therefore, judgment is being entered today dismissing the complaint of plaintiffs and adjudging costs against them.